UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES VRAZEL,

                    Plaintiff,                    14-CV-6209 (ADS)(ARL)

    -against-

LONG ISLAND RAIL ROAD COMPANY,

                    Defendant.
------------------------------------------------------------X
LONG ISLAND RAIL ROAD COMPANY,

                      Third-Party Plaintiff,

    -against-

SCHEIDT & BACHMANN GMBH and
SCHEIDT & BACHMANN USA, INC.

                    Third-Party Defendants
------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY DEFENDANT'S SUMMARY JUDGMENT MOTION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CHARLES VRAZEL,

                      Plaintiff,                14-CV-6209 (ADS)(ARL)

   -against-

LONG ISLAND RAIL ROAD COMPANY,

                      Defendant.
---------------------------------------------------------X
LONG ISLAND RAIL ROAD COMPANY,

                      Third-Party Plaintiff,

   -against-

SCHEIDT & BACHMANN GMBH and
SCHEIDT & BACHMANN USA, INC.

                      Third-Party Defendants
---------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendant, THE LONG ISLAND RAIL ROAD COMPANY ("LIRR") s/h/a LONG ISLAND RAIL ROAD COMPANY, by its attorney, STEPHEN N. PAPANDON, ESQ., submits the following Memorandum of Law in opposition to third-party defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure, Rule 56.

Plaintiff, Charles Vrazel, commenced the instant action against the LIRR alleging personal injuries caused by the negligence of the LIRR under the Federal Employer's Liability Act, Title 45 U.S.C.A. §§51-60. Defendant/third-party plaintiff opposes the third-party

defendants' motion for summary judgment pursuant to Rule 56 on the grounds that the LIRR raises genuine issues of material fact that must be resolved by a trier of fact.

## SUMMARY OF FACTS

On August 31, 2013, the LIRR employed plaintiff, Charles Vrazel, as a Ticket Clerk selling tickets at the Penn Station Ticket Office. (Brennan Dec., Exhibit I, Dugan Dep. pp. 18:6-19:3). He began his employment at the LIRR on July 11, 2001, working as a Ticket Clerk (Brennan Dec., Ex. "A" pp. 4-12; LIRR Initial Report of Employee Accident; AR-20 Accident/Incident Investigation). He reported to work at about 9:00 a.m. He was assigned to work at Window 3, TOM #1243 for the day. (Brennan Dec., Ex. "I", Dugan Dep. pp. 19:3).

The Ticket Operating Machine #1243, known as a "TOM", was designed and manufactured by Scheidt & Bachmann GmbH (Zuardo Dec. at ¶6). The TOM was connected to the power source by a unit or piece of equipment known as an uninterruptible supply ("UPS"). Ticket Clerks and Ticket Agents of the LIRR would sell tickets from the TOM and the responsibilities attendant to ticket selling, such as changing rolls of stock and stackers of stock, but they would not charge the "UPS" unit. A service call would be required to change the UPS unit. (Brennan Dec., Ex. K, Wyle Dep. Pp. 12:2-20; 14:4-22).

The Scheidt & Bachmann technicians made monthly visits to the ticket selling area at Penn Station (Brennan Dec., Ex. I, Dugan Dep. Pp. 58:17-22). S & B technicians serviced the LIRR TOMs for maintenance, and update, fixing errors and cleaning. (Brennan Dec., Ex. I, Dugan Dep. 58:2-8; 61:1-7) . LIRR Ticket Agents would neither to change the "UPS" unit as part of the regular duties nor be capable of doing it. (Brennan Dec., Ex. K, Wyle Dep. pp. 11-12; 14). Ex. I Dugan Dep. P. 57:1-58:1).

Plaintiff Vrazel alleged that prior to his accident of August 31, 2013, he had experienced

electrical problems with TOM #1243. He claimed that on numerous occasions of unknown date that he received shocks similar to static electricity. He averred that when the electric chocks began, he reported it to supervision, but was told to keep working. (Alston Dec., Ex. B, Plaintiff's Responses to Third Party Interrogatories, A1, p.2).

Yet, when plaintiff reported the accident to LIRR Assistant Terminal Manager Richard Mendelson, he did not tell him that he had ever previously felt any electrical shocks from TOM 1243 (Brennan Dec. Ex. H, Mendelson Dep. p. 29:18-22). Further, Mr. Mendelson was not made aware of any other employees being injured by electric shocks from their TOMs (Brennan Dec, Ex. I, Dugan pp. 46-48). Mr. Mendelson was not aware of any employees complaining of feeling electric shock from a TOM. (Brennan Dec), Ex. A, Mendelson Dep. pp. 29:23-30:4). The TOM malfunctioned on the date of plaintiff's accident. (Brennan Dec., Ex H: Mendelson Dep. pp. 41-45).

He further alleged that the TOMS were regularly moved by the ticket clerks. (Alston Dec., Exhibit 8 Plaintiff's Responses to Third Party Interrogatories, A1. p. 2). While the TOMs were on casters or wheels, they were fairly heavy and only moved by LIRR ticket clerks with reasonable care, under limited circumstances, such as to retrieve dropped coins or if there were problems with a plug of printer. In addition, LIRR ticket clerks typically had plastic shields against the welling windows to keep items from falling behind the machine. The fallen items could often times be retrieved without moving the TOMS. (Brennan Dec., Ex. I, Dugan Dep. pp. 48).

S & B Technician, Angelo Zuardo, made a service call around 2:30 p.m. on August 31, 2013 after the LIRR reported that an employee stated he had experienced shocks from TOM #1243. He initially stated that it was an electrical problem to be addressed by AMTRAK

(Brennan Dec.), Ex. C, LIRR document production p. 476, 478). S & B Technician Zuardo had to return the following day to replace a power cord and cable on TOM #1243. (Brennan Dec). Ex. C, p. 475); (Alston Dec. Ex. D (S&B Service records at 8).

## ARGUMENT

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Major League Baseball Props, Inc v. Salvino, Inc.*, 542 F3d 290, 309 (2d. Cir. 2008). When evaluating the material facts, the court will construe all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in of favor of the non-movant. *Dallas Aerospace, Inc. CIS Air Corp.* 352 F.3d 775, 780 (2d Cir. 2003). The movant has the burden of demonstrating the absence of genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999), a burden it can meet "if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found,* 51 F.3D 14, 18 (2d Cir. 1995).

If the movant satisfies its burden, the nonmoving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. See *Celotex*, 477 U.S. at 324. "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)(citation omitted). Moreover, material disputes must be based on specific facts as reflected in the adverse party's response, by affidavits or as otherwise authorized by Rule 56, *see Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). "Conclusory allegations, conjecture, and

speculation...are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998). Naturally, reasonable inferences may defeat a summary judgment motion, but only when they are supported by affirmative facts and relevant, admissible evidence. *See* Fed. R. Civ. P. 56(c)(4); *Spinelli v. City of New York*, 579 F. 3d 160, 166-67 (2d Cir. 2009.). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

Federal Rule of Civil Procedure Rule 56(c) provides that the following may be considered in support by a party asserting that a fact cannot be or is genuinely disputed:

> "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials."
>
> Fed R. Civ. P. 56 (c)(1)(A).

Material facts are those facts which may affect the outcome of the case. See *Anderson* at 477 U.S. 247, 248, 106 S. Ct. 2505 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material fact conclusively in its favor:

> It is sufficient that the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing version of truth at trial.

*T.W. Electrical Service Inc. v. Pacific Electrical. Contractors Ass'n*, 809 F. 2d 626, 631 (9th Cir. 1987).

Furthermore, the evidence of the nonmovant "is to be believed" and all justifiable inferences are to be drawn in its favor. See, *Anderson*, 477 U.S. at 249-250.

ARGUMENT I

QUESTIONS OF MATERIAL FACT EXIST REGARDING PLAINTIFF'S
ACCIDENT AND WHY TOM 1243 MALFUNCTIONED

The plaintiff, Charles Vrazel, brings this action under the Federal Employers Liability Act, 45 U.S.C.A. Section 51, et seq., alleging that the LIRR was negligent in failing to provide a safe workplace, safe tools and devices with which to work in his job as a Ticket Clerk at Penn Station on August 31, 2013. He claims that he received electrical shocks while working on TOM #1243, that produced and printed tickets for LIRR customers. He claimed that he was seriously injured by electrical shocks from the TOM. Third Party Defendants, S & B, assert that they are entitled to summary judgment because thee are no genuine issues of facts and due to the LIRR's alleged .

Under the Federal Employers Liability Act ("FELA"), a railroad would be found to breach its duty to an employee "if it knows or should have known of the potential hazard in the work place and yet failed to exercise reasonable care to inform and protect its employees." *Williams v. Long Island Rail Road*, 196 F. 3d 402, 406 (2d Cir. 1999). LIRR respectfully submits that the record is rife with material factual issues that determine resolution by a jury. Thus, a jury would have to determine whether the LIRR exercised reasonable care under the circumstances on the date of plaintiff's accident. A jury would need to determine whether there was an unsafe condition or equipment on the date of plaintiff's accident; what the unsafe condition or equipment was; and whether the TOM was defective or equipment or a component used with TOM 1243, was defective or improperly maintained and installed. The LIRR and S & B had a contractual agreement for S & B to design, manufacture, deliver and service the TOMS, among other ticket vending machines. The LIRR did not maintain or service the TOM machines; it was a function/requirement of S & B under Contract 9284 and the relevant Change Order #22. Furthermore, the LIRR did not provide the UPS unit, as S & B asserts. In addition, the jury must decide whether parts or components used by S & B in the maintenance and repair of the TOMS

were unfit or unsafe, whether it is the power cord of TOM #1243, or the prong or grounding wire of the UPS unit. Likewise, the same material issues of fact exists with regard to whether the S & B created the alleged dangerous condition or had actual or constructive notice of a broken or faulty plug or ground wire in the UPS cord as that S & B Technician, Zuardo attests that he replaced.

S & B cites the testimony of Assistant Terminal Manager Mendelson, as an admission "[i]f there was an electrical defect, plaintiff shall not be working on the machine. Mr. Mendelson, however, was informed that there was an electrical malfunction. He was not sure if the faulty component was the plug that went into the wall or was coming from the machine. There is a question of fact whether S & B created the condition leading to the malfunction of the TOM or power cord affixed to the TOM or UPS unit, which allegedly caused plaintiff's injuries.

Based upon the testimony cited above and in the LIRR's counterstatement of facts, there are differing versions of truth about what caused the electrical shocks from the TOM #1243. S & B service records also raise material questions of fact as to whether Technician Zuardo properly serviced the subject machine in the months before plaintiff's accident since he failed to correctly diagnose the source of electrical current on his initial service call to inspect TOM #1243 on August 31st. A jury could draw a reasonable inference that he did not properly perform his duties on prior service calls.

Where the evidence in the records consisting of deposition testimony, interrogatories, business records of the LIRR and S & B raises sufficient material questions in dispute they should to be answered by a jury. See *Tovar v. Ralph's Grocery*, 2009 U.S. District Lexis 33858, (U.S. D. Ct. D. Nev. April 20, 2009).

A defendant in a FELA action is entitled to adjudicate the issue of whether plaintiff's

negligence contributed to his accident, which is an issue to also be submitted to the jury. See *Wise v. Union Pacific Railroad Co.*, 815 f. 2D, 55 (8th Cir. 1987).

Employees of a railroad have a duty to exercise reasonable or ordinary care for their own safety. See, *Kirn v. Stanfield*, 111 F. 2d 469 (8th Cir. 1940); *Atlantic Coast Co. v. Dixon*, 189 F. 2d 525 (5th Circ. 1951), cert. Denied, 342 U.S. 830 (1951).

## ARGUMENT II

## QUESTIONS OF MATERIAL FACT EXIST CONCERNING SCHEIDT & BACHMANN'S SERVICE AND WHETHER A DEFECT EXISTED IN COMPONENTS THEY USED

With regard to S & B claim that the LIRR is not an indemnified party under Contract #9284, is evidenced by the Certificate of Insurance (KRA Dec), Exhibit "D". The LIRR was an indemnified party under an insurance contract as well as the contractual terms of Contract #9284. The testimony of Kevin Wylie did not admit that such contract terms did not exist, only that he was imfamiliar with the specific contract terms. He testified that the contract was negotiated by his former boss, Beth Sullivan.

Under its claim for common law indemnification, the inquiry is whether S & B was responsible for causing injury to plaintiff because of any negligence committed, not any misconduct. Thus, the LIRR admission that S & B was not guilty of misconduct does not preclude questions of fact as to whether third-party defendants' conduct was negligent.

Similarly, the LIRR's claim for contribution under CRLR Article 14 concerns whether S & B breached a duty of care and caused injury to plaintiff Vrazel. The relevant inquiry is the standard of negligence, which involves the reasonable conduct of a party of the action, not a misconduct standard.

## CONCLUSION

Defendant/Third Party Plaintiff LIRR requests that, based upon the foregoing, and upon the entirety of the record, that third-party defendants S & B's motion for summary judgment be denied in its entirety.

Dated: April 29, 2016

_____
KARLA R. ALSTON